UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20678-CR-MOORE/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ERIC HANNA, TREVOR RANSFER,

    Defendants.
_____/

**REPORT AND RECOMMENDATION
ON DEFENDANTS' JOINT MOTION TO SUPPRESS EVIDENCE**

This matter is before the Court on Defendants' Joint Motion to Suppress Evidence ("Motion"). [D.E. 184]. The Motion was filed, and referred, shortly before trial is scheduled in the case. The Court has reviewed the Motion, the Government's responses [D.E. 193] and held an evidentiary hearing regarding the Motion on January 27, 2012. For the following reasons, the Motion should be **DENIED**.

## I. BACKGROUND

Defendants Eric Hanna ("Hanna") and Trevor Ransfer ("Ransfer") (collectively "Defendants") previously moved to suppress their post-arrest statements because they were procured, among other things, by coercion in violation of their Fifth Amendment rights. [D.E. 58, 59]. On January 17, 2012, this Court recommended that those motions be denied [D.E. 120], which Judge Moore adopted in its entirety. [D.E. 164].

The Defendants again move to suppress their post-arrest statements and physical evidence. Now, however, the Defendants contend that this evidence ought to be suppressed based on the recent Supreme Court decision in *United States v. Jones*, 565 U.S. ___, No. 10-2159, 2012 WL 171117 (Jan. 23, 2012), which holds that the government's installation of a GPS tracking device on a vehicle and its use of that device to monitor the vehicle's movements without a valid warrant constitutes a "search" violating a defendant's Fourth Amendment rights. *Id.* at 3. Because the Government utilized information to locate and arrest the Defendants "solely based on that GPS tracking device that law enforcement had unlawfully placed on [co-defendant Montavis Middleton's] vehicle," the Defendants argue that *Jones* deems this initial search, their subsequent seizure and any evidence arising therefrom unlawful under the Fourth Amendment. [D.E. 184 at 3].

## II.   FINDINGS OF FACT

The Court previously outlined the complete facts of the case in its earlier Report and Recommendation. [D.E. 120 at 2-7]. The facts particularly relevant to this Motion are as follows. After arresting Khambrel Bynum, a former member of co-defendant Robert Davis' robbery crew, law enforcement learned of this robbery crew, Defendant Hanna, and that the crew frequently utilized co-defendant Montavis Middleton's white Ford Expedition. Law enforcement then matched this vehicle to surveillance video from the May 11, 2011 Sweetwater Farm Store robbery. Additionally, the significance of this vehicle was further highlighted based on cell phone evidence linking Defendants Davis and Middleton to additional robberies.

On May 26, 2011, based on this information, but without a warrant, law enforcement installed a GPS tracking device on this vehicle, which was located in a public parking lot. The Government acknowledges that, at a minimum, the tracking device was capable of relaying when and where the vehicle was located.

On May 27, 2011, Bynum made a controlled call to Davis, which law enforcement recorded. During the call, Davis stated that his crew was about to commit another robbery, but that the vehicle they had stolen to commit the robbery had been recovered by the owner via an anti-theft GPS device installed in the vehicle. Davis stated that they would be committing another robbery soon, once they obtained another vehicle. Law enforcement continued to surveil the Davis crew waiting for the next robbery to occur.

On June 1, 2011, after receiving notice of a robbery that matched the *modus operandi* of this robbery crew, Miami-Dade Police Department Sergeant Paul Villaverde activated the GPS tracking device to locate this vehicle. Sgt. Villaverde determined that the vehicle was stationary and directed officers to its location – a parking complex located at approximately 179th street and 107th Avenue. Sgt. Villaverde credibly testified that this location was the singular piece of information provided by the GPS device. Thereafter, Det. Corey Thomas arrived at the location, visually identified the vehicle and relayed to Sgt. Villaverde that the vehicle was mobile. From this moment forward, law enforcement relied solely on information provided by Det. Thomas, rather than the GPS device.

Det. Thomas followed the vehicle, which was closely followed by another vehicle suspected to be a getaway vehicle (a white Toyota Solara) for a short distance. Law enforcement followed the two vehicles a few blocks into a gas station and approached them once they stopped. Inside the Expedition were co-defendants Ransfer and Hanna. Inside the white Toyota Solara were Ronisha Davis and co-defendant Middleton. After being confronted by the arresting officers and upon exiting the Expedition, Defendant Hanna was observed throwing a wad of money, subsequently recovered by officers, under the front right tire. Defendant Ransfer had in his possession a credit card belonging to the Wendy's manager who had been robbed that evening. Inside the Solara, law enforcement recovered additional items belonging to the Wendy's robbery victims. The two vehicles were then impounded and search warrants were obtained for both vehicles.

There is no dispute that these Defendants were permitted to use the Expedition at the relevant time. The Government also concedes that the GPS device is the sole source of information that led law enforcement to the vehicle's location that evening. Also, the record establishes that: 1) the vehicle was unoccupied when law enforcement installed the GPS tracking device; and, 2) the vehicle was unoccupied when Sgt. Villaverde activated the device and determined its stationary location.

The Government opposes the Motion, however, based primarily on the argument that because the Expedition that was the subject of the "search" being challenged by the Defendants belonged to co-defendant Middleton, the Defendants had no property interest in the Expedition and had no reasonable expectation of privacy while using

4

another individual's vehicle. Therefore, neither Defendant has standing to challenge the search of the Expedition.

The Government adds that even if these Defendants had standing, the Motion should be Denied because (a) the installation of the GPS tracking device was reasonable under the Fourth Amendment even without a warrant because reasonable suspicion should allow law enforcement to use such devices in public areas and (b) even if unlawful evidence was obtained from the installation of the device it is not subject to the exclusionary rule because it was conducted in reasonable reliance on binding precedent that permitted its use prior to the Supreme Court's decision in *Jones.*

### III.   ANALYSIS

In *United States v. Jones,* the Supreme Court concluded that a "search" under the Fourth Amendment is triggered when law enforcement attaches a GPS tracking device to a vehicle and uses that device to track the vehicle's movements. 565 U.S. ___, No. 10-2159, 2012 WL 171117 (Jan. 23, 2012). The Government invaded a person's effects when "[t]he Government physically occupied private property for the purpose of obtaining information." Slip Op. at 4. Justice Scalia's majority opinion expressly noted that Jones "was 'the exclusive driver'" of the vehicle, and that if he "was not the owner he had at least the property rights of a bailee." *Id.* at 3 n.2. Jones – as the effective property owner or bailee of the vehicle – had standing to challenge an infringement on his property. Indeed, Justice Scalia emphasized that Jones "possessed the Jeep at the time the Government trespassorily inserted the information-gathering device," *id.* at 9, contrasting Jones's situation from earlier cases in which the Court had

5

blessed the use of electronic beepers that had been placed inside packages before they were transferred to the defendant challenging their use. *Id.* at 9 (distinguishing *Karo v. United States,* 468 U.S. 705 (1984), because "Karo accepted the container as it came to him, beeper and all, and was therefore not entitled to object to the beeper's presence, even though it was used to monitor the container's location").

Indeed, the point of disagreement with the concurring opinion in *Jones* was the re-emergence of a trespass theory for Fourth Amendment searches rather than application of existing reasonable expectation of privacy doctrine. *Id.* at 4-6 (Alito, J., concurring). But the result of the case under the concurring opinion would have been that surreptitious long-term monitoring of the Defendant through the GPS device constituted a search because it "impinges on expectations of privacy." *Id.* at 13. In that case, the driver of the vehicle had an expectation of privacy that he would not be monitored for four weeks with agents "track[ing] every movement that respondent made in the vehicle he was driving." *Id.*

Under either approach recognized by *Jones*, an essential component of the Fourth Amendment claim requires that one's own personal "effects" have been trespassed (e.g., one's automobile when a GPS tracking device was secretly installed), or that one's own expectation of privacy was impinged (e.g., one's own movements were continuously monitored and tracked for a material period of time). That is principally where these Defendants' attempt to benefit from the Supreme Court's decision in *Jones* fails. Neither Ransfer nor Hanna was either the owner or exclusive user of the Ford

6

Expedition. To the contrary, the record shows that members of the robbery crew consistently referred to the Expedition as co-Defendant Middleton's truck. It is undisputed, and the Court has found, that neither Ransfer nor Hanna was in possession of the Expedition at the time that the alleged trespass (the installation and subsequent use of the tracker) occurred. It is also undisputed that Middleton owned that vehicle at all relevant times. Thus, to the extent that *Jones* relies upon a theory of trespass upon private property, neither Ransfer nor Hanna has standing to challenge a trespass upon property as to which they had no rights.

Moreover, Defendants Ransfer and Hanna also lack standing to challenge the installation and use of the GPS device on the Ford Expedition because – under a traditional *Katz* analysis – they had no reasonable expectation of privacy in the vehicle. In *Jones,* five members of the Court concluded that Justice Scalia's trespass theory did not form a sufficiently comprehensive analysis of the Fourth Amendment implications of GPS monitoring and argued that GPS monitoring should also (in the case of Justice Sotomayor) or only (in the case of Justice Alito) be analyzed to determine whether it has invaded a reasonable expectation of privacy. Under this traditional test as well, neither defendant Ransfer nor Hanna had a reasonable expectation of privacy in the Ford Expedition or its movements, and thus neither has standing to challenge the installation and use of the GPS device.

Under traditional *Katz* analysis, the Fourth Amendment prohibits unreasonable searches and seizures, but only individuals bearing a legitimate expectation of privacy in the area invaded may invoke its protections. *E.g., Smith v. Maryland,* 442 U.S. 735,

740 (1979). A defendant seeking to suppress evidence bears the burden of establishing a legitimate expectation of privacy in the area searched. *See, e.g., United States v. Harris,* 526 F.3d 1334 (11th Cir. 2008). A legitimate expectation of privacy cannot arise from mere possession, but instead exists only if both the person has a subjective expectation of privacy, and society is prepared to recognize that privacy as reasonable. *See, e.g., United States v. Segura-Balthazar,* 448 F.3d 1281, 1286 (11th Cir. 2006).

For purposes of this analysis under *Jones,* one must have an expectation of privacy as to the particular vehicle tracked, either from an ownership or possessory interest. One must either possess the vehicle when the tracker is installed, which did not occur here, or at least one must be inside the vehicle at the time the tracker is being used to monitor the vehicle. But it is undisputed that at the time this vehicle was being tracked on that day neither Hanna nor Ransfer were in possession of the vehicle. It was in fact not in possession of anyone. And by the time Hanna and Ransfer met up with the vehicle, traditional surveillance techniques were already in use – an officer's visual observations of the vehicle – rather than the GPS tracking device. The Court found credible the officer's testimony that he ceased using the tracking device software on his computer once Det. Thomas reached the vehicle and began following it himself.

Consequently, neither at the time of the installation of the device, nor at the relevant time it was being used, did Hanna or Ransfer own or possess the vehicle sufficient to claim that their own expectation of privacy was impinged. *Jones,* therefore, has no application here.

8

The Defendants' contrary argument, that the overarching unlawful activity through use of the warrantless GPS tracking device constitutes an "umbrella" of protection over any one or anything directly or indirectly obtained from the tracking of this vehicle, is highly unpersuasive. It is universally accepted that Fourth Amendment rights are "personal rights" that cannot be asserted vicariously. *See Minnesota v. Carter,* 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable, i.e., one which has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."); *United States v Payner,* 447 U.S. 727, 731 (1980) ("Our Fourth Amendment decisions have established beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices. [A] court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights."); *Rakas v. Illinois,* 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections."); *Alderman v. United*

*States,* 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.").

That principle clearly applies to searches of automobiles. *See, e.g., United States v. Ramos-Soto,* 304 Fed. Appx. 578 (9th Cir. 2008) ("Defendant lacked standing to challenge search of vehicle . . . where defendant fled vehicle that he neither owned nor leased, and that he had been in only once."); *United States v. Shareef,* 100 F.3d 1491, 1499-1500 (10th Cir. 1996) ("we have held that a defendant in sole possession and control of a car rented by a third party has no standing to challenge a search or seizure of the car."); *United States v. Padilla,* 111 F.3d 685, 688 (9th Cir. 1997) ("conspirators must show that they personally have a property interest protected by the Fourth Amendment that was interfered with or a reasonable expectation of privacy that was invaded by the search.").

Defendants do not convincingly show why the type of search recognized by *Jones* should be treated differently. Standing principles have always been applied for even greater intrusions into Fourth Amendment zones of privacy, so it naturally follows that the same principles apply to the intrusion created when law enforcement uses a GPS monitor to conduct a search. *See, e.g., ACLU v. National Sec. Agency,* 493 F.3d 644 (6th Cir. 2007) (rejecting challenge to warrantless wiretap program to monitor terrorists where no personal rights were asserted; "it would be unprecedented for this court to find standing for plaintiffs to litigate a Fourth Amendment cause of action without any evidence that the plaintiffs themselves have been subjected to an illegal

10

search or seizure."); *United States v. SDI Future Health, Inc.,* 553 F.3d 1246 (9th Cir. 2009) ("Absent such a personal connection or exclusive use, a defendant cannot establish standing for Fourth Amendment purposes to challenge the search of a workplace beyond his internal office."); *Ferguson v. City of Charleston,* 308 F.3d 380 (4th Cir. 2002) ("Fourth Amendment rights are personal rights which, like other constitutional rights, may not be vicariously asserted.  We are aware of no decision holding, or even suggesting, that a mother has a reasonable expectation of privacy in her newborn child's bodily fluids.").

We also need not speculate as to that because all of the Justices' opinions in *Jones* recognized the application of possessory or privacy interests that persons could invoke to claim protection GPS monitoring.  Thus, we find that it is an essential element for a Fourth Amendment claim under *Jones* that personal property rights or personal zones of privacy must be infringed before GPS surveillance can be deemed to infringe on that person's Fourth Amendment rights.

Here, the undisputed facts show otherwise.  These Defendants did not own or control the vehicle in question when the tracker was installed, and they did not control or possess the vehicle at the time that it was being tracked that led to their seizure.  Therefore, no personal rights have been asserted in this case.  Fourth Amendment standing is lacking.  That dooms Defendants' arguments and we need not go any further.

Finally, because the standing argument fully resolves the Defendants' motion, we will not go further to address the other points raised in opposition by the

Government. Thus, especially with a short time frame, we need not challenge the less persuasive argument that GPS vehicle tracking is per se reasonable and does not require a warrant, as the Government maintains. Nor do we need to address the more compelling argument that the exclusionary rule could not apply in this case even if Defendants had standing to challenge the GPS tracking of Middleton's vehicle. We conclude that those issues should be addressed on another day for another case.

### III.   CONCLUSION

Accordingly, the Defendants' motions to suppress [D.E. 184] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until **January 31, 2012** to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. The Court finds good cause to expedite the objection period in light of the imminent trial date. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein, if any. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 30th day of January, 2012.

   */s/ Edwin G. Torres*
   EDWIN G. TORRES
   United States Magistrate Judge